## NEWTOWN CREEK TOWING CO. et al. v. THE SOCONY NO. 16.

### No. 18237.

District Court, E. D. New York.

May 27, 1948.

Alexander & Ash, of New York City (Edward Ash and Joseph A. Calamari, both of New York City, of counsel), for libellants.

John W. Knox, of New York City, for respondent.

GALSTON, District Judge.

On June 13, 1945 the tug Russell No. 17 was proceeding up the East River, having in tow a coal barge alongside on her starboard side. Coming down in the opposite direction was the Socony No. 16, having in tow one barge on her port side and another on her starboard, both alongside. As these tows approached each other, the Russell No. 17 having passed under the Brooklyn Bridge, a collision occurred somewhere in the area off the Brooklyn Navy Yard piers, at about 9:40 p. m. Each tug blames the other for negligent operation.

There is much contradiction in the versions given by witnesses for the respective parties. These relate first to the position of the Russell as she was proceeding up the river; secondly there is conflict as between the distance separating the two flotillas when they exchanged one-whistle signals and as to the place of collision.

Though the weather was clear and the visibility good, and both tugs carried the usual running lights, there was apparent misunderstanding by the respective captains, or bad navigation, which brought about the collision. The tide was half flood, and as it proceeds up the East River it strikes along Piers 6 or 7 on the New York side and then veers over towards Pier 35 on the Brooklyn side.

The Russell version is that she was in the middle of the river when in the vicinity of the Brooklyn Bridge and observed the Socony tow coming down off the New York shore in the neighborhood of Pike Street. Lambert, and his deckmate who corroborated him, testified that at that time the Socony showed only a red light. The Russell blew a one-whistle signal and slowed down. It may be remarked here that that first one-whistle signal was not responded to, and shortly thereafter, according to Lambert, the captain, the Russell blew a second one-whistle signal. This is the first signal that Captain Smith of the Socony heard, and he answered with a one-whistle signal. Thus Lambert was justified in believing that a port to port passage was agreed upon. However, despite the agreement of signals, the Socony gave a backing signal and also an alarm. It is incomprehensible why Smith should have given a one-whistle signal in the circumstances, for he contends that the vessels were but 150 or 175 feet apart. He added that the Russell suddenly showed her red light, each vessel up to that time having shown only her green light. Lambert, on the other hand, maintained that the Socony "opened up on me like coming for Brooklyn, and I had to starboard my wheel, and I pulled to port to get away from him". By "opening up" the witness meant that the Socony showed both running lights. The collision followed between the port side of the tug Russell and the port barge of the Socony flotilla.

Smith placed the Russell tow, when first seen by him, about 250 feet off the New

York piers. This is in material contradiction of Lambert. Meanwhile the Socony tow was proceeding down the river 350 feet off the Manhattan piers, and according to Smith the relative positions of the vessels at that time indicated to him that they could have passed safely starboard to starboard with a clearance of 100 feet.

If Smith is correct it is hard to understand why Lambert called for a port to port passage.

I am inclined to think, in respect to the initial position of the Russell, that Lambert's testimony is more accurate than that of Smith. On the other hand there are some aspects of Lambert's testimony which cannot be readily accepted. He said that five minutes elapsed from the time of the exchange of whistle signals until the collision. The facts do not bear him out in that estimate. He places the distance which separated the vessels at the exchange of one-whistle signals at 800 feet; Smith at 150 or 175, and Captain Blaha, apparently a disinterested witness in charge of a New Haven tug which was coming down the river at the same time, estimated that the two tows were only 175 feet apart at the time of the exchange of signals. However, in weighing his testimony it must be observed that he was navigating a tug with a covered barge on the starboard side, approximately 160 feet off the Brooklyn shore. He was traveling parallel with the original course of the Socony and was at a distance of 1,000 feet from the colliding vessels.

Again another difficulty in Lambert's testimony is that if he went 200 feet to starboard after having been in the middle of the river, the collision would have occurred 200 feet nearer the Brooklyn piers. Nevertheless he contends that the collision was in the middle of the river. Thus his story is inconsistent with his contention that he was already in the middle of the river under the Brooklyn Bridge.

Because I cannot give full credence to Captain Lambert's testimony, and cannot reconcile the apparent inconsistencies of his version of the collision, and since I think that Captain Smith was also in error in responding with a one-whistle

blast when he admitted that a port to port passage at the distance which then separated the vessels could not safely be effected, I believe that fault must be ascribed to both vessels, for Smith's signals undoubtedly confused Lambert.

The libellants may have a decree for half damages.